UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN ZALZAR, | Civil Action No. 24-381 (SDW-AME) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| NEW JERSEY DEP'T OF CORRECTIONS, et al., | |
| Defendants. | |

**IT APPEARING THAT:**

1. On or about January 23, 2024, Plaintiff Juan Zalzar, a civilly committed person under the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24-38, confined in the Special Treatment Unit ("STU"), in Avenel, New Jersey, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") N.J.S.A. 10:6-2 *et al.* (ECF No. 1). This Court granted Plaintiff's application to proceed without payment of the filing fee ("IFP application") under 28 U.S.C. § 1915(a). (ECF No. 2).

2. Because Plaintiff was granted *in forma pauperis* status, this Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

3. In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

4. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

5. Plaintiff names the following defendants to this action: New Jersey Department of Corrections, Major John Doe, Lieutenant C. Mirra, Sergeant Parmar, and Officer Cromarti-Marti. Plaintiff seeks damages and injunctive relief. Therefore, this Court liberally construes the claims against the individual defendants as brought against them in their personal and official capacities.

6. Plaintiff alleges the following facts in support of his claims under 42 U.S.C. § 1983 and the NJCRA.[1] On the evening of December 4, 2023, Plaintiff's room in the north unit of the STU was searched by several correctional officers ("the search crew"). The search crew removed a large amount of Plaintiff's personal property from his cell and left it piled nearby in the day room. When the search concluded, Plaintiff began to return his property to his room. The evening lock-in count was impending, and Plaintiff was trying to return all of his property to his room before the count.

7. Sergeant Parmar, in passing, told Plaintiff that he was not allowed to store his personal property in the day room. Plaintiff followed Sergeant Parmar to the officers' desk area to respond that he was not storing his personal property in the day room, the search crew left it there, and Plaintiff was in the process of returning it to his room. Sergeant Parmar responded "I don't give a fuck," to which Plaintiff replied, "Because you're a sergeant, you should give a fuck." Sergeant

---

[1] The New Jersey Civil Rights Act is analogous to 42 U.S.C. § 1983 in that it creates a private right of action for violation of civil rights secured by the New Jersey Constitution, the laws of the state of New Jersey, and the Constitution and laws of the United States. *See Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6–1 to 2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.") Therefore, "courts in this district have generally interpreted the NJCRA to be coextensive with its federal counterpart." *Estate of Lydia Joy Perry ex rel. Kale v. Sloan*, Civ. No. 10–4646 (AET), 2011 WL 2148813, at *2 (D.N.J. May 31, 2011) (citing *Jefferson v. Twp. of Medford*, 2010 WL 5253296, at *13 (D.N.J. Dec. 16, 2010); *Celestine v. Foley*, 2010 WL 5186145, at *6 (D.N.J. Dec. 14, 2010); *Chapman v. New Jersey*, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009); *Slinger v. New Jersey*, 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), *rev'd in part on other grounds*, 366 F. App'x 357 (3d Cir. 2010)). This Court will address Plaintiff's § 1983 and NJCRA claims together, under § 1983 precedent.

Parmar told Plaintiff to go lock in his room. Plaintiff was agitated and gesturing with his arms and hands, asking how was he going to get his property out of the day room if he was locked in.

8. Sergeant Parmar ordered Plaintiff to place his hands behind his back, and he handcuffed Plaintiff and subsequently removed him from general population to Temporary Close Custody ("TCC"). While Plaintiff was handcuffed, Officer Cromarti-Marti appeared. Plaintiff witnessed Officer Cromarti-Marti, in the presence of others, destroying some of his personal property in the day room, including a shoe rack that had sentimental value to Plaintiff as a gift from his deceased father.

9. On December 4, 2023, Lieutenant Mirra wrote a memo about the incident involving Plaintiff's removal to TCC. The memo stated Plaintiff refused to lock in his room, he clenched his fist and punched his other hand, and Sergeant Parmer perceived this as a threat. This did not match Plaintiff's recollection of events. Plaintiff was escorted to the medical annex after he was handcuffed, and once cleared, he was "processed through the B.O.S.S. chair and strip searched with negative results for contraband." He was placed in TCC status without further incident. The property outside his room was searched and was negative for contraband. His room was searched again, also with negative results. The earlier search of his room that day was not a routine search.

10. Lieutenant Mirra never interviewed Plaintiff about the incident, but the incident was captured on video surveillance footage.

11. As a result of his placement in TCC status, Plaintiff was denied sex offender treatment for several months.

12. NJDOC rules required Officer Cromarti-Marti to issue residents a confiscation slip for confiscated property. Officer Cromarti-Marti had a history of confiscating and destroying residents' personal property and not completing a confiscation slip or an itemized property

4

inventory slip. Many residents have written complaints about Officer Cromarti-Marti violating this rule.

13. Officer Cromarti-Marti also has a history of destroying personal property by using his personal tool kit to disassemble electronics and other property, which is an unauthorized search procedure that is inconsistent with a written search plan in effect at the STU. Plaintiff identifies in the complaint a number of residents who were subject to these actions by Officer Cromarti-Marti in the past, including Plaintiff. Officer Cromarti-Marti is aware that the STU has an x-ray system to search the inside of electronics without taking them apart, but he chooses not to use it.

14. Sergeant Parmar and Officer Cromarti-Marti have not received any specific training regarding the care, custody and control over civilly committed residents in the STU.

15. Defendant Doe, the Search Plan Coordinator for the STU, is aware of how many searches Officer Cromarti-Marti performed, and the names of the residents who were subject to those searches. Therefore, the Search Plan Coordinator, Major John Doe, knew or should have known about Officer Cromarti-Marti's mishandling of residents' personal property, and because Officer Cromarti-Marti continues with the same misconduct, Major John Doe is complicit in it.

16. Defendants Doe, Parmar and Cromarti-Marti have refused to adhere to the therapeutic internal management procedures and policies "regarding all issues raised with[in] this Complaint and facilitated by the IOB [Interagency Oversight Board]."

17. Plaintiff alleges Defendants' conduct violated his property and liberty interests under the Due Process Clause of Fourteenth Amendment and the New Jersey Constitution by their destruction of his shoe rack, and his loss of sex offender treatment while in TCC status.

18. Plaintiff's Fourteenth Amendment due process claim and his parallel NJCRA claim for deprivation of his personal property are **DISMISSED** without prejudice for failure to state a

claim. *See Zalazar v. Stem*, No. CV 16-7092 (SDW), 2016 WL 7387416, at *5–6 (D.N.J. Dec. 20, 2016) (finding plaintiff had an adequate post-deprivation remedy for loss of personal property under New Jersey state tort law) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (additional citations omitted)).

19. Plaintiff's Fourteenth Amendment due process claims and parallel NJCRA claims for deprivation of sex offender treatment while he was in TCC status are **DISMISSED** without prejudice for failure to state a claim. *See Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007) ("Our Court later extended [] foreclosure of procedural due process protections to a situation like that presented here—a plaintiff civilly committed in New Jersey claiming a procedural due process violation by his wrongful placement in [restricted status]") (alteration added and citations omitted).

20. The § 1983 and NJCRA claims for damages against the New Jersey Department of Corrections are **DISMISSED** with prejudice based on Eleventh Amendment sovereign immunity. *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012) (holding that a prison within the New Jersey Department of Corrections, which is an arm of the State of New Jersey, is entitled to sovereign immunity under the Eleventh Amendment).

21. This Court liberally construes the complaint to allege Officer Cromarti-Marti conducted an unreasonable seizure of Plaintiff's property, his shoe rack, in violation of the Fourteenth Amendment. This claim may proceed against Officer Cromarti-Marti. Plaintiff's claim may also proceed against Major John Doe, Institutional Search Plan Coordinator of the STU, against whom Plaintiff has alleged sufficient facts of his custom of ignoring Officer Cromarti-Marti's unreasonable search and seizure practices. It does not appear that Plaintiff is challenging

the reasonableness of any other search alleged in his complaint, including his strip search. If Plaintiff intended to do so, he may file an amended complaint.

22. In conclusion, this Court, upon *sua sponte* screening of the complaint pursuant to 28 USC § 1915(e)(2)(B) will dismiss in part and proceed in part Plaintiff's § 1983 and NJCRA claims.

An appropriate order follows.

Dated: _____April 16_____, 2024

                                                  Hon. Susan D. Wigenton,
                                                  United States District Judge